LittletoN, Judge,
delivered the opinion of the court:
The alleged loss of $35,789.87 which plaintiffs seek to recover is alleged to have resulted from failure of defendant to furnish cars when requested which was due to a car shortage during the time the United States was in control of the railroads and to other war conditions. They allege that the failure of the United States to immediately furnish them with railroad cars when demanded in which to ship the 3,600 tons of hay under their contracts with the Quartermaster General’s office at a contract price of $14 a ton resulted in plaintiffs losing their option to purchase this hay from others at $12 a ton, and that it forced them at great expense to purchase the hay in the open market at prices greatly in excess of the contract price of $14 a ton to the Government. The suit was instituted under a Special Act as follows:
Be it enacted by the Senate and Rouse of Representatives of the United States of America in Congress assembled., That the claim of T. D. Randall and Company growing out of losses and/or damages suffered under purchase orders numbered 1904, and 1914 to 1919, both inclusive, for furnishing hay to the Army during the late war, is hereby referred to the United States Court of Claims with jurisdiction to hear the same to judgment and to adjudicate the same upon the basis of the losses and/or damages suffered due to car shortage and/or other war conditions: Provided, That suit on such claim may be instituted at any time within four months after the date of enactment of this Act, notwithstanding the lapse of time or any statute of limitation (49 Stat. 2305).
Plaintiffs entered into contracts on July 6, 1918, with the Quartermaster General’s office for the delivery of 3,600 tons of hay of a specified quality and for a price of $14 a ton, f. o. b. cars, point of shipment, pursuant to plaintiffs written offer of July 5. In these contracts plaintiffs agreed to complete delivery by August 15, 1918. In none of the contracts did the United States obligate itself to furnish plain *332 tiffs with the necessary cars within any specified time. At that time the railroads were under the control of the United States, and the World War was in progress.
In substance, plaintiffs’ case, upon which they base their claimed right to recover for the alleged increased costs and expenses of the hay delivered to the Government under their contracts, is as follows:
Prior to the time; plaintiffs offered to sell the hay to the defendant they had been advised by one of their field purchasing agents that one C. A. Eeeves, a commission merchant dealing in hay at Capac, Michigan, would be able to obtain and furnish a large tonnage of hay and that a verbal option had been obtained from him for 3,600 tons of mixed hay; that the option thus obtained imposed upon plaintiffs the obligation of furnishing freight cars when required by Eeeves for the loading and shipping of the hay. Plaintiffs expected to procure from Eeeves all the hay necessary to fulfill its contracts of July 6, 1918, with the Government and they expected that the United States would furnish, or assist in furnishing, the necessary railroad cars so that the hay which they expected to obtain from Eeeves at $12 a ton could be promptly loaded and shipped, although there was nothing in the contract obligating the Government to furnish the railroad cars at any time and no discussion or understanding was had with plaintiffs with reference to furnishing the necessary cars within any specified time. There was no time limit fixed in the options which plaintiffs obtained from Eeeves to purchase the hay in question, but plaintiffs agreed in obtaining the option to furnish Eeeves the cars at Capac, Michigan, for the loading of hay when needed by him. On July 15, 1918, nine days after plaintiffs had made contracts with the Government, and before the representatives of the Eailroad Administration at Michigan points had been able to place 300 empty cars at Capac, Michigan, requested by plaintiffs in which to make shipments of the hay to be purchased from Eeeves, the latter canceled his options to plaintiffs. Plaintiffs, therefore, contend that by reason of the cancellation of their options by Eeeves they were compelled to go into the open market to *333 procure the necessary hay to fulfill the Government’s contracts at much higher prices and at greater expense, for which the Government should reimburse them by reason of its failure to furnish the 300 railroad cars before Reeves canceled his option.
Upon the facts disclosed by the record, we are of opinion that plaintiffs are not entitled to recover. Certainly there was no breach of any of the contracts by the defendant, and plaintiffs do not so contend. Plaintiffs whole case is based upon the claim that the loss was directly attributable to and caused by car shortage and war conditions, upon the basis of which the jurisdictional act authorizes an adjudication of the loss sustained and the entry of judgment therefor. But it is clear that the jurisdictional act cannot be construed as authorizing the entry of a judgment for any losses or damages sustained by plaintiffs by reason of any conditions that existed prior to and at the time they made their offer and entered into the contracts with the Government. We cannot attribute to Congress an intention to authorize the court to enter judgment in favor of plaintiffs for losses sustained by reason of the fact that with full knowledge of war conditions and car shortages then existing they made an improvident offer to sell hay to the Government at a price then considerably below the existing market price for hay, and during a period of rapidly-rising prices, without first having obtained title to the hay which they contracted to furnish to the Government at a specified price. The Special Act of Congress does not authorize the entry of judgment in favor of plaintiffs for any loss or damage which they may have sustained by reason of the cancellation by Reeves of an option which plaintiffs had obtained from him to purchase at $12 a ton the hay necessary to fill the Government contracts. This was the real reason and the proximate cause of any loss sustained by plaintiffs. The Government cannot be required to respond in damages to plaintiffs by reason of its inability under existing conditions to immediately furnish through the Railroad Administration the three hundred cars necessary in order to prevent Reeves from canceling his option to plaintiffs. Horowitz v. United States, 267 U. S. 458, 461. The facts clearly show that the *334 shortage of railroad cars and the war conditions were no different after plaintiffs made their offer on July 5 and their contracts with the Government on July 6, 1918, than they had been for some time prior thereto, and certainly a period of nine days was not a reasonable time, in the circumstances, to allow the Government to furnish, at Capac, Michigan, 300 empty railroad cars.
The Special Act confers upon this court jurisdiction to adjudicate and enter judgment upon the claim of plaintiffs growing out of losses or damages suffered under three Government contracts for hay on the basis of car shortage or other war conditions. The language of the Act makes .it plain that the conditions arising after the making of the contracts with the Government, rather than conditions existing on and before July 5, 1918, are to be made the basis for the determination of plaintiffs’ losses. The contracts with the Government, under which plaintiffs agreed to furnish the hay, obligated plaintiffs to procure the freight cars for shipment thereof. On the date the contracts were made, and for a considerable period of time prior thereto, a freight blockade had existed at Eastern terminals which had produced a car shortage. No representative of the Government ever assured plaintiffs that the Government would procure the necessary cars for shipment of the hay, although the Government did give plaintiffs all the assistance possible in that connection. Notwithstanding the existing car shortage, the Government from the 1st of July to November 1918, made available and placed for plaintiffs’ use 1,344 freight cars for the shipment of hay under various contracts which plaintiffs had with the Government; of this number only 300 cars were needed to ship the 3,600 tons of hay called for under the three contracts mentioned in the jurisdictional act and involved herein. During the period mentioned about 250 of the 300 cars, required by plaintiffs' to ship the hay in question, were placed by the Government on plaintiffs’ request at various Michigan points situated in the hay-growing area for shipment of the hay involved in the instant case. Some of these cars were placed at Capac, Michigan, for hay shipments which plaintiffs obtained from Reeves at increased prices, after Reeves had *335 previously canceled the option which he had earlier given plaintiffs, and for shipments by other hay jobbers located there. Plaintiffs completed their deliveries to defendant under the contract involved on November 29,1918.
Upon the whole record, we think it is clear that any loss or expense which plaintiffs may have incurred in excess of prices at which they agreed to sell the hay to the Government was due not to any car shortage or any war conditions arising subsequent to July 5, 1918, but to the failure of plaintiffs to acquire title to the hay necessary to fill the Government’s contracts or to secure a binding option therefor at a price equal to or less than the price at which they agreed to sell the 3,600 tons of hay to the Government.
Plaintiffs are therefore not entitled to recover and the petition is dismissed. It is so ordered.
Williams, Judge; Gheen, Judge; and Whaley, Chief Justice, concur.
Whitakek, Judge, took no part in the decision of this case.